UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEBORAH MASTERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:12CV1070 HEA |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's request for judicial review under 28 U.S.C. § 405(g) of the final decision of Defendant denying Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq* and Supplemental Security Income (SSI) under Title XVI, 42 U.S.C. §1381, *et seq*. For the reasons set forth below, the Court affirms the Commissioner's denial of Plaintiff's applications.

## **Facts and Background**

Plaintiff was 52 years old at the time of the hearing. She was 49 years old as of the date of onset of February 10, 2009. She had training as an EMT, worked

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

as a home health aide, and studied for CNA but did not complete the course work. She stopped working in February or March of 2009. The ALJ found Plaintiff had the impairments of: joint disease, rheumatoid arthritis, status post hip replacement, degenerative disc disease of the cervical and lumbar spine, synouitis of the left ankle, retro-calcaneal bursitis of the right foot, plantar fasciitis, and achilles bursitis and tendonitis.

At the September 15, 2011, hearing, Plaintiff testified that she is married and lives with her husband. Plaintiff testified about having a GED and training as an EMT. She has worked as a home health aide and has studied to be a CNA but did not complete the course work. Plaintiff also had brief employment with a nursing home. Plaintiff stopped working in February of 2009. She testified she could no longer do heavy lifting, stooping, standing, or bending. This was occasioned, according to Plaintiff, by the flare ups of swelling and stiffness in her hands, wrists, and shoulders. Plaintiff also stated she has had a number of falls due to her knees locking up. Her condition worsened in 2011, and as of June 2011, she was prescribed a power wheelchair.

A vocational expert also testified. The VE testified, in relation to an onset date of June 1, 2011, that Plaintiff could perform work that is limited to sedentary work but no work involving climbing ropes, ladders, or scaffolds; may occasionally knell, crouch, or crawl; may frequently push and pull; may

occasionally perform fine finger manipulation and frequently perform gross finger manipulation; and avoid extremes in cold and wetness. The VE testified there are no jobs in St. Louis that satisfy these requirements. For the period prior to June 1, 2011, the vocational expert testified there were jobs in the St. Louis area that satisfied Plaintiff's RFC status for the period February 10, 2009, to June 1, 2011. In that regard the VE testified Plaintiff had the residual capacity to perform light work as defined in 20 CFR 404.1567(b) and 4165.967(b) except should avoid climbing ropes, ladders, scaffolds; may occasionally kneel, crouch, or crawl; may frequently push or pull with her arms; may occasionally perform fine finger manipulation and frequently perform gross finger manipulation; and must avoid extremes of cold and wetness. Plaintiff's application for social security and supplemental security income benefits under Titles II, 42 U.S.C. §§ 401, *et seq.*, and XVI of the Act, 42 U.S.C. § 1381, *et seq.*, was denied on December 10, 2010. On October 17, 2011, the ALJ issued a partially favorable decision concluding that plaintiff has been disabled beginning June 1, 2011. The Appeals Council denied Plaintiff's request for review of the ALJ's decision. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

**Standard For Determining Disability**

The Social Security Act defines as disabled a person who is "unable to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work

activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a) (4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a) (1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.*. At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the

claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir.2012).

## ALJ's Decision

Applying the foregoing five-step analysis, the ALJ in this case determined at Step One that Plaintiff had not engaged in substantial gainful activity since February 10, 2009, the alleged onset date of disability. At Step Two, the ALJ found that Plaintiff had the following severe impairments: degenerative joint disease; rheumatoid arthritis, status post hip replacement, degenerative disc disease of the cervical and lumbar spine; synovitis of the left ankle; retro-calcaneal bursitis of the right foot; plantar fasciitis; and achilles bursitis and tendonitis. At Step Three, the ALJ found since the alleged onset date of February 10, 2009 Plaintiff does not have an impairment or combination of impairments that met or

equaled in severity of any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

Prior to Step Four, the ALJ found that Plaintiff, prior to June 1, 2011, the date Plaintiff became disabled, she had the residual functional capacity to perform light work as defined 20 CFR 404.1567(a) and416.967(a) except avoiding climbing ropes, ladders or scaffolds; may occasionally kneel, crouch, or crawl; may frequently push and pull; may occasionally perform fine finger manipulation and frequently perform gross finder manipulation; and avoid extremes of cold and wetness. The ALJ also found that beginning June 1, 2011 the Plaintiff had the residual capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and416.967(a) except she should avoiding climbing ropes, ladders or scaffolds; may occasionally kneel, crouch, or crawl; may frequently push and pull; may occasionally perform fine finger manipulation and frequently perform gross finder manipulation; and avoid extremes of cold and wetness.

At Step Four, the ALJ determined that Plaintiff is unable to perform any past relevant work since February 10, 2009..

At Step Five, the ALJ considered Plaintiff's RFC, age, education, and work experience to determine that there are no jobs that exist in the national economy that Plaintiff can perform and granted disability from the date of June 1, 2011. No

disability was found for the period preceding June 1, 2011.

## Standard For Judicial Review

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir.2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir.2009)). In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d

860, 863 (8th Cir.2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005)). The Court should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006).

## Discussion

In her appeal of the Commissioner's decision, Plaintiff makes the following arguments: (1) the ALJ's finding for the period prior to June 1, 2011, was not supported by substantial evidence, (2) The ALJ did not properly find that Plaintiff could perform other work prior to June 1, 2011.

**RFC and Medical Evidence**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue,* 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the

claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. *See Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

**The ALJ's RFC Finding Prior to June 1, 2011, was not Supported by Substantial Evidence**

It is the claimant's burden to prove her RFC, and it is the ALJ's responsibility to determine the RFC based on all relevant evidence in the record. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.").

An RFC finding must be supported by some medical evidence. *See Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000). However, it does not need to be based on the opinion of any one particular physician. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("'[T]he ALJ [was] not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.'" (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007))).

While the ALJ considers the medical evidence from the claimant's doctors, the ALJ remains the ultimate arbiter of RFC. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (Commissioner uses medical sources to "provide evidence" regarding several factors including residual functional capacity, but "final responsibility for deciding these issues is reserved to the Commissioner"). In this case, the ALJ based her RFC finding on the objective medical evidence in the record.

The ALJ found that prior to June 1, 2011, Plaintiff had the RFC to perform light work with certain limitations (Tr. 54). Specifically, she noted that Plaintiff should avoid climbing ropes, ladders, or scaffolds (Tr. 54). The ALJ concluded that Plaintiff could occasionally kneel, crouch, crawl, and perform fine finger manipulation (Tr. 54). She found that Plaintiff could frequently perform gross finger manipulation and push and pull with her arms (Tr. 54). The ALJ restricted Plaintiff's exposure to extreme cold and wetness (Tr. 54).

The medical evidence supported Plaintiff's diagnosis of rheumatoid arthritis (Tr. 349). This impairment did not limit her to sedentary work prior to June 1, 2011. For instance, in March 2009, Plaintiff alleged she exacerbated her rheumatoid arthritis, but also reported lifting furniture (Tr. 55, 312). Three months later, Dr. Mannis observed that Plaintiff had a slow gait, but full range of motion

in her elbows, hands, wrists, and knees (Tr. 462-63). X-Rays showed only minimal to mild degenerative changes in Plaintiff's hips, right shoulder, wrist, and spine (Tr. 465-69). Hospital records from May 28, 2011, stated that her gait was steady and she was ambulating without assistance (Tr. 509). Plaintiff's primary-care physician, Dr. Caciolo, saw her numerous times for arthritis pain, but suggested conservative treatment (Tr. 348-49). And Dr. Muckerman-McCall opined that Plaintiff was capable of performing light work (Tr. 57). The ALJ gave Dr. Muckerman-McCall's assessment great weight because it was based on Dr. Mannis's examination, Plaintiff's inconsistent use of a walker, and x-rays that showed minor impairments (Tr. 473-74). The medical evidence demonstrated supported the finding of the ALJ.

In June 2011, Plaintiff met with Dr. Coulson after she fell and exacerbated her rheumatoid arthritis (Tr. 58, 504). Dr. Coulson prescribed medication and ordered a power wheelchair for Plaintiff the next day (Tr. 58, 586). Plaintiff's condition continued to worsen, with Dr. Kennen restricting her activities and requiring her to wear a fracture boot in July (Tr. 562). Finally, in September 2011, Dr. Coulson submitted an extremely restrictive RFC (Tr. 595). Plaintiff also testified that her symptoms had "gotten extremely worse" since June 2011 (Tr. 26). She claimed that since June she "had more flares and more instability of

walking and being able to do things" (Tr. 26). The ALJ's use of June 1, 2011, as Plaintiff's disabling date properly encompassed Plaintiff's loss of mobility and deterioration in health at that time.

As observed by the ALJ, the limitations by Dr. Coulson are not relevant or germaine to the period prior to June 1, 2011. However, Dr. Coulson completed an arthritis RFC questionnaire on September 19, 2011, and the assessment did not purport to describe Plaintiff's limitations for the entire period, i.e., from February 20, 2009, onward (Tr. 589). In the questionnaire, Dr. Coulson opined that Plaintiff could rarely twist, stoop, crouch, or crawl (Tr. 590). She found that Plaintiff had significant limitations reaching, handling, and fingering (Tr. 590). Dr. Coulson also instructed Plaintiff to use a power wheelchair (Tr. 586).

Prior to June 2011, Plaintiff met with Dr. Coulson three times for treatment (Tr. 523, 544, 552). Dr. Coulson never recommended Plaintiff restrict her movement, and often suggested conservative treatment options like exercise, stretching, and massage (Tr. 544, 523). The opinion of the ALJ was based upon the substantial evidence of the record.

Although the opinion of the ALJ could arguably be tidier on the finding Plaintiff could perform light work, ("[a]n arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding

where the deficiency probably had no practical effect on the outcome of the case.") *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004). "Light work" is a term of art with a specific and well-known meaning. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (discussing the demands of light work). The ALJ's finding that Plaintiff could perform light work was equivalent to a finding that she was restricted in the areas of sitting, standing, walking, carrying, and lifting. The Eighth Circuit has noted that the regulations define light work as including "(1) lifting or carrying ten pounds frequently; (2) lifting twenty pounds occasionally; (3) standing or walking, off and on, for six hours during an eight-hour workday; (4) intermittent sitting; and (5) using hands and arms for grasping, holding, and turning objects." *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001); *see* 20 C.F.R. §§ 404.1567(b); 416.967(b). To more fully encompass Plaintiff's impairments, the ALJ made the additional finding that Plaintiff could frequently push and pull with her arms (Tr. 52). There is no uncertainty about the findings of the ALJ.

The relevant medical evidence supported the ALJ's determination that Plaintiff was able to perform light work with certain limitations prior to June 1, 2011. Because the evidence clearly showed that Plaintiff's condition deteriorated in June, the ALJ's RFC finding should be upheld.

**The ALJ Did Not Properly Find that Plaintiff Could Perform Other Work Prior to June 1, 2011**

A vocational expert testified at the hearing in response to a proper hypothetical of a claimant with the RFC of Plaintiff. The vocational expert testified that a hypothetical claimant with Plaintiff's education, work experience, and limitations prior to June 1, 2011, could perform work as a cleaner, call-out operator, and investigator (Tr. 31-32). Based on the vocational expert's testimony, the ALJ determined that Plaintiff could perform other work that existed in significant numbers in the national economy (Tr. 59). *See Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007) (a vocational expert's response to a complete and correctly-phrased hypothetical provides substantial evidence for the ALJ's step five conclusion). The ALJ properly found that Plaintiff was not disabled prior to June 1, 2011 (Tr. 60).

The ALJ's RFC finding is clearly based upon the record as a whole. The ALJ summarized Plaintiff's testimony regarding her limitations, the treatment notes regarding her impairments, the medical opinions in the record, Plaintiff's representations, and the ALJ's credibility findings. The ALJ applied the proper standard to the facts before her and her determination of Plaintiff's RFC is supported by the record as a whole.

## **Conclusion**

After careful examination of the record, the Court finds the Commissioner's determination is supported by substantial evidence on the record as a whole, and therefore, the decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is affirmed.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 9th day of February, 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE